UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MAHA I.,<br><br>　　　　　　　　Plaintiff,<br><br>　　v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　　　　　Defendant. | CASE NO. C19-205-BAT<br><br>**ORDER AFFIRMING THE COMMISSIONER AND DISMISSING THE CASE** |

Plaintiff Maha I. seeks review of the denial of her application for Supplemental Security Income. She contends the ALJ misevaluated the medical opinion evidence, erroneously failed to find her impairments met or equaled a listing, and erred in evaluating her residual functional capacity. Dkt. 10. The Court **AFFIRMS** the Commissioner's final decision and **DISMISSES** the case with prejudice.

## BACKGROUND

Plaintiff is currently 49 years old, has one year of college education, and has no past relevant work. Tr. 44, 56, 174. She applied for benefits in July 2015, alleging disability as of her application date. Tr. 174. After her application was denied initially and on reconsideration, the ALJ conducted a hearing and, on February 27, 2018, issued a decision finding plaintiff not

disabled. Tr. 15-29. The Appeals Council denied plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. Tr. 1.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[1] the ALJ found that plaintiff had not engaged in substantial gainful activity since the application date; she had the following severe impairments: diabetes mellitus, hyperthyroidism, asthma, degenerative disc disease, osteoarthritis of bilateral knees, hip joint labral tear, obesity, depression, and post-traumatic stress disorder (PTSD); and these impairments did not meet or equal the requirements of a listed impairment.[2] The ALJ found that plaintiff had the residual functional capacity to perform light work with additional physical and mental limitations. Tr. 20-21. The ALJ found that plaintiff has no past relevant work, but there are jobs that exist in significant numbers in the national economy that plaintiff can perform. Tr. 28. Accordingly, the ALJ found that plaintiff was not disabled. Tr. 28-29.

## DISCUSSION

**A.  Medical opinions**

Plaintiff argues that the ALJ erred in evaluating the opinions of treating doctor Shawn Meyers, M.D., examining doctor Kathleen Andersen, M.D., and treating psychiatric provider Lakew Adnew, DNP-c, PMHNP-BC. Dkt. 10 at 3. In general, the ALJ must give specific and legitimate reasons for rejecting a treating or examining doctor's opinion that is contradicted by another doctor, and clear and convincing reasons for rejecting a treating or examining doctor's uncontradicted opinion. *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996).

---

[1] 20 C.F.R. § 416.920.

[2] 20 C.F.R. Part 404, Subpart P. Appendix 1.

*1. Dr. Meyers*

Dr. Meyers completed a documentation request for medical disability form in February 2017. He identified plaintiff's diagnoses as labral tear of the hip, low back pain, and depression and indicated that these were supported by testing, lab reports, or other means. Tr. 403. He opined that plaintiff had pain with standing, walking, laying on her side, lifting, and with sitting longer than 5 minutes, and she was unable to participate in work activity. *Id.* He opined that plaintiff was unable to lift at least 2 pounds or unable to stand or walk, and her condition was permanent. Tr. 404. He recommended continued physical therapy for her hip and back pain and a referral back to a surgeon for further evaluation. Tr. 404-05.

The ALJ found that Dr. Meyers indicated that he based his assessment on plaintiff's pain complaints for which he recommended physical therapy. Tr. 25. The ALJ noted that on the date he gave this opinion, Dr. Meyers stated in treatment records that he had completed "disability paperwork for period of 1 year" and provided a disabled parking pass. Tr. 377. The ALJ gave Dr. Meyers's opinion little weight, finding that the opinion contained little more than a list of plaintiff's diagnosed conditions and reported symptoms. Tr. 25. The ALJ found that the opinion lacked sufficient supporting evidence of clinical findings to support the extreme degree of severity alleged, and that it was not consistent with treatment records indicating "grossly normal" objective exams and limited, conservative treatment, including recommendations for physical therapy. *Id.*

Plaintiff argues that the ALJ erred in finding that Dr. Meyers based his opinion on plaintiff's pain complaints and asserts that he based his opinion on plaintiff's physical and mental conditions which had been established through objective testing. Dkt. 10 at 4. Dr. Meyers checked a box to indicate that plaintiff's diagnoses were supported by "testing, lab reports, etc."

Tr. 403. But he did not identify what those tests or other objective findings were or connect them to the functional limitations he opined. Rather, he identified plaintiff's limitations as "pain with" performing various activities. *Id.* The ALJ's finding that Dr. Meyers based his opinion on plaintiff's pain complaints rather than objective testing was a rational interpretation of the evidence that this court may not disturb. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff argues that the ALJ erred in finding the opinion to be inconsistent with treatment notes, as the ALJ did not cite to specific treatment notes when evaluating this opinion and the notes the ALJ identified elsewhere in the opinion do not support this finding. Dkt. 10 at 4. Significantly, although plaintiff criticizes the notes the ALJ identified, she does not point to any treatment notes, from Dr. Meyers or any other provider, that are consistent with or support Dr. Meyers's opinion. Moreover, the ALJ found that Dr. Meyers's opinion was not supported by any clinical findings that showed the extreme degree of severity alleged, such as neurologic/motor strength, sensory, or gait deficits. Tr. 25. The lack of supporting evidence was a valid reason to discount the opinion. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (ALJ may give less weight to a doctor's opinion that is brief, conclusory, and inadequately supported by medical records).

Finally, plaintiff argues that the ALJ erred by characterizing her treatment as limited and conservative, pointing out that Dr. Meyers recommended referral back to a surgeon (which the ALJ did not mention) in addition to continued physical therapy (which the ALJ did mention), and that the ALJ failed to explain how conservative treatment was inconsistent with Dr. Meyers's opinion. Dkt. 10 at 4-5. Although the ALJ did not discuss the surgical referral, she discussed the recommendation of physical therapy as an example of conservative treatment ("e.g., recommended physical therapy"), not as the sum total of plaintiff's treatment. Tr. 25. And

the ALJ found that the "extreme degree of severity" Dr. Meyers opined was inconsistent with the nature of plaintiff's treatment. Tr. 25. Plaintiff disagrees with the ALJ's interpretation of the nature of her treatment, but the ALJ could reasonably find that continued physical therapy and a surgical referral was inconsistent with an opinion that plaintiff could not lift 2 pounds or could not stand or walk—both extreme limitations. The ALJ did not err in evaluating the nature of plaintiff's treatment.

The ALJ gave specific and legitimate reasons, supported by substantial evidence, to discount Dr. Meyers's opinion. This Court may not disturb that assessment.

### 2. *Dr. Andersen*

Dr. Andersen examined plaintiff in February 2016. Dr. Andersen opined that related to plaintiff's high levels of ongoing anxiety, intrusive images, impaired concentration, and low energy, she would likely have marked to severe difficulty concentrating on tasks, persisting at tasks, and completing tasks in a timely fashion. Tr. 362. Dr. Andersen further opined that related to plaintiff's anxiety and emotional lability, she would have marked difficulty interacting consistently and appropriately in a work setting. *Id.* Dr. Andersen stated that she could not picture plaintiff successfully finding and maintaining employment and given that she is never by herself and rarely leaves the home, it would be difficult to picture how she would be able to attend a job on a consistent basis. Tr. 361-62.

The ALJ found that this opinion was based on a shapshot of plaintiff's functioning during a one-time evaluation rather than any longitudinal treatment history, and that it relied heavily on plaintiff's reports of extreme symptoms, including auditory and visual hallucinations and suicidal ideation. *Id.* The ALJ also noted that Dr. Andersen expressed doubts that plaintiff had put forth her best effort on cognitive testing, considering her very poor performance in light of her

educational background of one year of college. Tr. 27. The ALJ found that in light of Dr. Andersen's expressed doubts about plaintiff's effort, her self-reported extreme symptoms and limitations were also questionable. *Id.* The ALJ therefore gave some weight to Dr. Andersen's diagnostic assessment and findings of some significant limitations, but gave little weight to the opinion that plaintiff would be unable to sustain any kind of competitive work activities. *Id.*

Plaintiff argues that the ALJ erred in finding that Dr. Andersen relied heavily on plaintiff's unreliable reports of extreme symptoms, asserting that those symptoms are well supported in the record, and that Dr. Andersen did not question plaintiff's self-reports, but rather questioned her performance on cognitive testing, and did not rely heavily on plaintiff's self-reports in forming her opinion. Dkt. 10 at 7-8. In making this argument, plaintiff relies on the principle that an ALJ may not reject an examining physician's opinion by questioning the credibility of the patient's complaints where the doctor does not discredit those complaints and supports her ultimate opinion with her own observations. *Edlund v. Massanari*, 253 F.3d 1152, 1159 (9th Cir. 2001). But here, Dr. Andersen did question plaintiff's performance during the examination. Plaintiff attempts to distinguish Dr. Andersen's questioning of plaintiff's performance on cognitive testing from her self-reported symptoms. But the ALJ could rationally find that Dr. Andersen's questions about plaintiff's failure to put forth her best effort in cognitive testing undermined the reliability of plaintiff's presentation throughout the examination. The court finds that this was a valid reason to discount Dr. Andersen's opinion.

Plaintiff also argues that the ALJ's assessment of Dr. Andersen's opinion was vague because she did not specify which limitations she gave some weight to and that the ALJ failed to recognize that Dr. Andersen reviewed some treatment records in forming her opinion. Dkt. 10 at 6. The court finds that these arguments, even if they identify errors in the ALJ's evaluation of

Dr. Andersen's opinion, do not identify harmful errors in light of the ALJ's valid reason to discount the opinion. The court may not disturb the ALJ's decision to give little weight to Dr. Andersen's opinion.

   *3.   Mr. Adnew*

Mr. Adnew, plaintiff's treating psychiatric provider, stated in a June 2017 letter that plaintiff's diagnoses were PTSD, chronic type, and major depressive disorder; he also stated that she had been diagnosed with thyroid problems that affected her mood. Tr. 392. He reported her descriptions of symptoms at her visits and opined that due to her chronic PTSD she would face difficulty in sustaining employment. *Id.* In a mental residual functional capacity assessment form attached to his letter, he opined that plaintiff had marked to severe impairments in areas of understanding and memory; sustained concentration, persistence, and pace; and adaptation. Tr. 393-94.

A nurse practitioner is not an acceptable medical source who can give medical opinions. *See* 20 C.F.R. § 404.1513(a). The ALJ may evaluate opinions of other medical sources using the same factors used to evaluate medical opinions of acceptable medical sources. Social Security Ruling 06-03p; *see also* 20 C.F.R. § 404.1527(d). The ALJ must give specific, germane reasons for rejecting opinions from other sources that are not acceptable medical sources. *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993). But the ALJ may give less weight to opinions of other medical sources than to those of acceptable medical sources. SSR 06-03p.

The ALJ found that this opinion essentially consisted of rating checkboxes without explanation, and that, other than listing plaintiff's diagnoses and her reported symptoms, Mr. Adnew provided very little evidence of clinical findings to support the degree of severity he

opined. Tr. 27. The ALJ also noted that Mr. Adnew was not an acceptable medical source. *Id.* The ALJ therefore gave the opinion little weight. *Id.*

Plaintiff argues that discrediting an opinion simply because it is in checkbox form is not valid unless the opinion is inconsistent with the underlying clinical records. Dkt.10 at 10. But the ALJ did not reject this opinion merely because of the check-box format—the ALJ also noted that Mr. Adnew did not support his opinion with reference to clinical findings that were consistent with the severe limitations he described. Instead, he referred to plaintiff's reports of symptoms and her diagnoses. An ALJ may give less weight to an opinion that is brief, conclusory, and inadequately supported by medical records. *Bayliss*, 427 F.3d at 1216. The lack of reference to clinical findings was a germane reason to discount the opinion. Plaintiff asserts that Mr. Adnew's treatment notes do in fact support his opinion. Dkt. 10 at 10. But she asks the Court to interpret those notes in a manner more favorable to her. That the Court cannot do. The conclusory and unsupported nature of Mr. Adnew's opinion was a germane reason to give it little weight. The ALJ did not err in evaluating Mr. Adnew's opinion.

### B. Step two

Plaintiff argues that the ALJ erred by failing to find at step two that her mental impairments met or equaled a listed impairment. Dkt. 10 at 11. To meet or equal a listing, mental impairment must result in at least one extreme or two marked limitations in the following function areas (the "paragraph B criteria"): understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing oneself. *See* 42 U.S.C. § 12.00(A)(2)(b). The ALJ found that plaintiff had moderate limitations in the first three areas and mild limitations in the fourth. Tr. 19-20.

Plaintiff asserts that the ALJ mischaracterized Dr. Andersen's opinion, relied only on the non-examining doctors, and cherry-picked the testimony to find that plaintiff did not meet the paragraph B criteria. Dkt. 10 at 11. In making this argument, plaintiff asks the Court to weigh the evidence in a manner different from the ALJ.

For example, with respect to the area of understanding, remembering, and applying information, the ALJ found that plaintiff performed poorly on cognitive testing with Dr. Andersen, but was able to recount her immigration history including correct dates, and, as discussed above, Dr. Andersen questioned plaintiff's effort on the testing. Tr. 19. Plaintiff argues that the ALJ failed to acknowledge that plaintiff did not know the date or the state she was in and demonstrated difficulty with memory tasks on the exam. Dkt. 10 at 11. Plaintiff essentially asks the Court to find that the ALJ should have placed more weight on specific examples of memory difficulties than on the evidence that demonstrated her ability to remember information. But the ALJ is entitled to draw reasonable inferences logically flowing from the record. *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008). And, while the ALJ must "make fairly detailed findings in support of administrative decisions to permit courts to review those decisions intelligently," the ALJ "need not discuss all evidence presented." *Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984). The ALJ could reasonably infer from the evidence, which showed both abilities and difficulties in memory, that plaintiff had moderate difficulties in this area. The court cannot reweigh the evidence in the manner plaintiff proposes. And the court has already rejected plaintiff's arguments with respect to the ALJ's finding regarding Dr. Anderson's concerns about plaintiff's effort on testing. Plaintiff has not established that the ALJ erred in evaluating this area.

Plaintiff makes similar arguments with respect to the other functional areas. But these arguments again ask the Court to reweigh the evidence or to reject reasonable inferences the ALJ drew from the record. Plaintiff may disagree with the ALJ's interpretation of the evidence in evaluating the paragraph B criteria, but the court may not disturb the ALJ's findings for this reason. The ALJ's step-two findings are supported by substantial evidence and free of legal error. Accordingly, the Court may not disturb them.

### C. Residual functional capacity

Plaintiff argues that based on the errors she alleges in the ALJ's evaluation of Dr. Meyers's, Dr. Andersen's, and Mr. Adnew's opinions, the ALJ erred in evaluating her residual functional capacity. Dkt. 10 at 16-17. The court has rejected these arguments above and finds that they do not establish that the ALJ erred in evaluating plaintiff's residual functional capacity.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is **AFFIRMED** and this case is **DISMISSED** with prejudice.

DATED this 18th day of October, 2019.

BRIAN A. TSUCHIDA
Chief United States Magistrate Judge